## NORTHUM and others *against* KELLOGG.

In case of the intermarriage of a feme sole plaintiff, during the pendency of the suit, the husband, under our statute, (*tit.* 2. *c.* 1. *s.* 22.) may appear at the next term after such intermarriage, and cause it to be suggested on the record; but he will not be permitted to appear afterwards, without good reason for his neglect, to be shewn to, and approved by, the court.

Therefore, where a suit was commenced by *A* and *B,* his daughter, a feme sole, against *C,* during the pendency of which, *B* intermarried with *D;* more than a year afterwards, two continuances having intervened, *A* moved that the marriage of *B* should be suggested on the record, and the name of her husband entered ; and it appeared, that *A* and his counsel lived in the town in which the court was held, within a short distance of the court-house, and that the marriage was known to *A,* at the time it took place, though not to his counsel until some months afterwards ; and no reason was shewn for the neglect to suggest the marriage, at the first term of the court thereafter ; it was held, that *A's* motion came too late, and ought to be denied.

Where one of several plaintiffs is a feme sole, her intermarriage, during the pendency of the suit, is, at common law, a good ground of abatement.

It is not a ground of demurrer to a plea in abatement, which has been received by the court, that it was interposed at too late a period.

THIS was an action of trespass *quare clausum fregit,* brought by *Joel K. Northum, William B. Northum, Lucy-*

HARVARD LAW LIBRARY

*Middlesex,*
*July, 1843.*

Northum
*v.*
Kellogg.

*Ann Northum,* and *John C. Northum,* against *Alfred Kellogg,* to the county court, in *March,* 1841. The cause being appealed to the superior court, the defendant, at the *February* term, 1842, pleaded in abatement, that *Lucy Ann Northum,* one of the plaintiffs, since the term of the court to which the writ was made returnable, *viz.* on the 29th of *June,* 1841, was lawfully married to *Jabez H. Fuller,* who is still living, and is yet the husband of said *Lucy-Ann ;* and the said *Jabez H. Fuller* has not appeared, and does not appear, in this cause ; nor has he caused such intermarriage to be suggested on the records of this court.

To this plea the plaintiffs demurred specially, assigning the following causes of demurrer : 1st, That said plea was not made and delivered to the plaintiffs, or their attorney, or to the clerk of the court, on or before the opening of the court, at the last *February* term thereof, in the afternoon of the second day thereof; but that said plea was made and delivered to the counsel of the plaintiffs, on the third day of said term, and not before: 2dly, That a continuance has intervened between said pleas and the intermarriage of said *Lucy-Ann :* 3dly, That the court, at the present term thereof, and before any order upon the plaintiffs to answer said plea, decided, that said *Jabez H. Fuller,* the husband of said *Lucy-Ann,* should not come into court and cause said marriage to be suggested on the record of the court.

The cause was continued to the term of the superior court in *August,* 1842, when the following record was made: " *Lucy-Ann Northum,* one of the plaintiffs, having, after the commencement of this suit, on the 29th of *June,* 1841, intermarried with *Jabez H. Fuller,* who is still living, *John C. Northum,* by his counsel, moves the court, that said marriage be suggested on the record, and the appearance of *Jabez H. Fuller,* the husband, entered ; and that said suit may proceed, as if commenced after said intermarriage. To which motion the defendant objected, on the ground, that such suggestion, entry and appearance, should have been made at the next succeeding term of the court after such intermarriage, unless some sufficient reasons for the delay be shewn to, and approved by, the court. The court finds, that said *Lucy-Ann Northum* is the daughter of said *John C. Northum,* who is prosecuting said suit in his own right, and as guardian of the

other plaintiffs ; that he and the counsel employed by him, reside at *Haddam,* within a short distance of the court-house ; that said intermarriage was known to him, at the time it took place, but his counsel had no knowledge of it until the *February* term of this court, 1842, when it was pleaded in abatement to this writ ; and that said *Lucy-Ann* and her husband *Jabez H. Fuller* had resided in *East-Haddam* since their marriage." The authority of *John C. Northum* to cause the marriage to be suggested, and the appearance of the husband to be entered on the record, was proved, by a writing under the hand of *J. H. Fuller,* giving the former liberty to use his name for that purpose.

The case was reserved for the advice of this court, as to what order should be taken upon said motion, and what judgment should be rendered upon the demurrer to the defendant's plea in abatement.

*Clark,* for the plaintiffs, contended, 1. That the court should order the intermarriage of *Lucy-Ann* with *J. H. Fuller* to be suggested on the record. The case is within the very letter of the statute. *Stat.* 48. *tit.* 2. *c.* 1. *s.* 25. The rule which the court adopted in *Russell* v. *Hosmer,* 8 *Conn. R.* 229., ought not to be applied in this case ; because, if the rights of other persons are affected, by the neglect of an executor or administrator to enter, they may have their proper redress against such executor or administrator. But here the plaintiffs are remediless, if their motion is not allowed.

2. That the suit ought not to abate under the defendant's plea. For, in the first place, it was not delivered to the plaintiffs or their attorney, on or before the second opening of the court on the second day of the term. 1 *Root,* 564. Secondly, a continuance had intervened between the intermarriage and the plea. To make intermarriage during the pendency of the suit, a ground of abatement, it must be pleaded as *since the last continuance—post ultimam continuationem. Bac. Abr. tit.* Abatement. G. Thirdly, the court, in deciding that the plaintiff should answer the defendant's plea, virtually made *Fuller* a party on the record.

*Bulkley* and *Palmer*, for the defendant, contended, 1. That the intermarriage of a feme sole plaintiff, during the pendency of the suit, is, at common law, matter of abatement. *Gould's Plead.* 247, 8.    1 *Sw. Dig.* 607.    *Oxnard* v. *Kennebeck Purchase,* 10 *Mass. R.* 179.

2. That the right of entry and appearance given by our statute, must be subject to some reasonable limit; and the rule laid down in *Russell* v. *Hosmer,* 8 *Conn. R.* 229., is applicable to this case—*viz.* that the right must be exercised at the first term after the event, unless for reasons shewn to, and approved by, the court.    Here no reason for delay appears.

3. That the reception of the plea, was a matter within the *discretion* of the court; and that it was offered too late, was not a ground of demurrer.    *Morgan* & al. v. *Dyer,* 10 *Johns. R.* 161.    *Ludlow* v. *M'Crea* & al. 1 *Wend.* 228. 230.

4. That it does not appear, but that the plea was filed as soon as the intermarriage came to the knowledge of the defendant.    Of course, it was filed as soon as it could be.

5. That it was received without objection, and the cause continued on the plea.    After this, an objection to its reception comes too late.

Storrs, J.    *Lucy-Ann Northum,* one of the plaintiffs, having, since the commencement of this suit, intermarried with *Jabez H. Fuller,* the first question reserved for our advice, is, whether, under the circumstances of the case, such marriage should be allowed to be suggested on the record, and the said *Fuller* permitted to prosecute the suit with the other plaintiffs. This, clearly, could not be done, by the common law. But it is claimed to be allowable under the statute, which provides, that " no action commenced by a single woman, who intermarries during the pendency thereof, shall abate, on account of said intermarriage, provided the husband shall appear in court, and cause such marriage to be suggested on the record; and that he may then proceed in the same manner as if the suit was commenced after such intermarriage." *Stat.* 49. *tit.* 2. *sect.* 25.    Although the construction of this statute, and the practice to be pursued under it, have not, as to the point in question, before been presented, this court, in the case of *Russell* v. *Hosmer,* 8 *Conn. R.* 220., had occasion,

as to a similar question, to settle the meaning of an analogous statute, which provides that, " when an action shall be pending in any superior or county court, and the plaintiff, before final judgment, shall die, it shall not abate, if it might originally have been prosecuted by his executor or administrator ; and that, in such case, the executor or administrator may enter their names in the suit, if they see cause, and prosecute the same." *Stat.* 49. *tit.* 2. *s.* 27. It was there determined, on much deliberation, that under that statute, the executor or administrator may enter at the next term after the death of the plaintiff, as a matter of right ; but that he shall not be permitted to enter afterwards, without showing good reason for his neglect ; and that of the sufficiency of such reason, the court is to decide, from the facts shewn by the executor or administrator. With that decision we are entirely satisfied ; and unless there are substantial reasons to distinguish that case from the present, as to the point now presented, we are not disposed to adopt a different principle. Unless some essential diversity can be shewn between the two cases, there ought, in both, to be a uniformity of practice. Such diversity we do not perceive. The general objects of the two statutes are similar—that of one being to obviate the effect of the death, and of the other, the effect of the intermarriage, of the plaintiff ; and to provide, that the suit shall not abate for such cause, as it would by the common law, but that it may be prosecuted by the representative or husband respectively. With respect to the time within which it shall be competent for them to suggest the death or intermarriage, and enter their names as plaintiff, (which is the question now before us,) it is difficult to suppose, that the legislature could have intended any distinction. All the reasons drawn from the inconveniences and evils, so forcibly pointed out, by the judge giving the opinion of the court, in *Russell* v. *Hosmer*, which would result from permitting the executor or administrator to enter and prosecute, at any time, however remote, after the death of the plaintiff, apply with full force in the case of the intermarriage of one of the plaintiffs, and render it equally necessary to prescribe some limitation. We, therefore, adopt the same principle in both cases, and hold, that it is incumbent on the husband, in order to entitle himself to suggest the marriage, after a term has inter-

*Middlesex,*
July, 1843.

Northum
*v.*
Kellogg.

vened, to show some special reason for his neglect, which shall be satisfactory to the court.

In the present case, it is found by the court, that the said *Lucy* is the daughter of *John C. Northum,* who moves, that her marriage be suggested on the record, and the name of her husband entered ; that the said *John* lived in *Haddam,* within a short distance from the court-house, and also of the residence of the plaintiffs' counsel ; and that the marriage was known to the said *John,* when it took place ; and no reason whatever is given why the marriage was not suggested at the first term of the court thereafter. The motion to suggest the intermarriage, and to insert the name of the husband as a plaintiff, was, therefore, too late, and should be denied.

The remaining question is, as to what judgment ought to be rendered on the plea in abatement, which avers the intermarriage of one of the female plaintiffs since the commencement of the suit. That in the case of a sole female plaintiff, the suit abates by her marriage, and that all the joint-tenants, or tenants in common, must join as plaintiffs in an action of trespass, or that their non-joinder may be pleaded in abatement, are familiar principles. *Gould's Plead.* 247, 8. *Bac. Abr. tit.* Abatement. G.   1 *Chitt. Pl.* 64, 65. (8th *Am.* ed.)   Hence it results, that the marriage of one of several plaintiffs, during the pendency of the suit, has the same effect as if she was sole plaintiff ; and to that effect is *Oxnard* v. *Proprietors of Kennebeck Purchase,* 10 *Mass. R.* 179., where this point is directly decided.

But the demurrer to the plea in abatement, in this case, is special, and points out that the plea was interposed at too late a period, and ought, therefore, to be disallowed. This, however, is not a cause of demurrer to the plea. It goes neither to its substance nor form ; but only to its reception by the court. Whether the plea was tendered within time, and ought to be received, respects merely the practice of the court ; and an irregularity in that particular, is not the subject of a demurrer, which respects only the sufficiency of the plea. On the question of its reception, the parties had an opportunity to be heard. It is sufficient that the court received it, and made it a part of the record. *Morgan* & al.

v. *Dyer*, 10 *Johns. R.* 161. *Ludlow* v. *McCrea* & al. 1 *Wend.* 228. 230.

The demurrer to the plea in abatement should, therefore, be overruled.

In this opinion the other Judges concurred, except CHURCH, J., who was not present when the case was argued, and, therefore, gave no opinion.

<div align="right">

Motion to enter disallowed.
Demurrer to plea overruled.