## THOMAS McGRATH & Co. *v.* HOOPES AND MARYE.

The statute of the State does not require the drawer of a bill of exchange, who lives in the State, to be sued jointly with the acceptor.

IN error from the circuit court of Claiborne county; Hon. Stanhope Posey, judge.

*George V. Moody* for appellants.

The bill never having been indorsed, I contend the act of 1837, requiring drawers and indorsers to be sued in a joint action, is not applicable to the case, and this court has so held in the case of *Thompson* v. *Planters Bank*, 2 S. & M. 476.

The letter and spirit of the act of 1837, (Code, 862, art. 7,) accords with this construction. The law was evidently enacted for the sole purpose of protecting indorsers; by the 6th and 7th sections of the act, the sheriff is restrained from levying any execution emanating upon a judgment obtained under the act, so far as the indorser's property is concerned, unless the plaintiff files his affidavit, that the drawer has no property. By the 10th section of the act, the plaintiff is declared to be liable as a trespasser, if he cause his execution to be levied on indorser's property, when the principal debtor has sufficient property to satisfy the debt. By the 5th section, the clerk is required to indorse on the execution the names of the drawers and indors-

McGrath & Co. v. Hoopes and Marye.

ers, particularly specifying the first, second, and third indorsers. A plaintiff was at liberty, according to our statutes before the act of 1837, to sue any one or more of the drawers, acceptors, or indorsers of a bill or note, at his option, subject only to consolidation of the suits, if he brought separate actions against such parties, returnable to same term of a court. Hutch. Code, 845; Ib. 837. We insist the law is only changed in cases of indorsements; the mischief intended to be remedied was this, and this only. Before 1837, plaintiffs could sue indorsers, and recover their debts, while, during the progress of such suits, the principal debtor might dispose of his property by sale, or his property might be swept away by other judgments, and the act of 1837 was passed to compel creditors to obtain a lien on the property of the party primarily liable, at the same time he obtained his lien against the surety.

The case of *Gwin* v. *Mandeville*, 9 S. & M. 325, will be relied on by counsel for appellees, in sustaining their views of the case. But the court will see, by an inspection of the facts of that case, this state of things: there an indorsee sued the drawers and indorsers of a bill of exchange, but failed to sue, in that action, the party primarily liable, to wit, the acceptors.

The act of 1837 does not apply to the case at bar, because the record shows that the bill was drawn, accepted, and payable in the State of Louisiana, and the record does not show that the acceptors, Hoopes and Marye, or either of them, ever were living or resident in the State of Mississippi. The plea in abatement does not set up the fact, then, as the court in their judgment on this demurrer cannot know any fact which is not alleged in the pleadings. How can we be called upon to make this joinder, when the acceptors do not appear by the record to reside in this State? In the case of *Bullitt* v. *Thacher*, 5 How. 695, this court decided, that where the drawer of a bill was a non-resident, the act of 1837 did not apply, although the bill was indorsed, and several of the parties, acceptors and indorsers, resided in this State.

*J. B. Coleman*, for appellees,

In reply, contended there was no error in the case, and that

the bill of exchange is in the hands of the payee, and was never indorsed.

Acceptors, as well as indorsers, are embraced in the act of 1837, requiring all the parties to a bill, living and residing within the State, to be sued in one action. *Gwin* v. *Mandeville*, 9 S. & M. 324.

Mr. Justice FISHER delivered the opinion of the court.

This was an action of assumpsit in the circuit court of Claiborne county, by the payee of a bill of exchange, against the acceptors.

The question for decision arises upon the plaintiffs' demurrer to the defendants' plea in abatement, which sets forth that the drawers of the bill were residents of the county of Carroll in this State, and not being sued in the action, it was prayed that the same might be abated. The court overruled the demurrer, and the suit was accordingly abated.

The statute of 1837 (Hutch. Code, 852) does not in express language require the acceptor of a bill of exchange to be sued jointly with the drawer and indorsers on the bill. But, from the object of the law, we entertain no doubt as to the legislative intention on this subject. It is only necessary to apply the familiar rules of construction to relieve the statute from all doubt or ambiguity. It was intended to operate as a remedial statute, to relieve against the mischief at the time felt by the community, by providing another remedy for the holder of commercial paper, more in accordance with justice and equity. It was intended mainly for the relief of drawers and indorsers of bills of exchange and promissory notes, by requiring the holder to bring his suit against all parties bound thereon, resident in the State, for the double purpose of taxing the party primarily liable with the entire costs of the litigation, and of compelling him, if possible, to pay the judgment when recovered.

It may be the right of a drawer or indorser, if sued at all, to be sued jointly with the accepter of the bill or maker of the note. We can readily see how he can be benefited by being thus joined, in the protection which he receives against the payment of the costs of the suit. But while we readily see

this benefit to the drawer or indorser, we see at the same time a corresponding burden imposed upon the acceptor, who is charged with the costs occasioned by the increase of parties to the suit.

How, then, can he complain that the suit has not been brought in a manner to tax him with this additional tax ? The plea, if it amounts to any thing, shows that the acceptors are benefited by the nonjoinder of the drawers in the action ; and it is therefore no defence for them.

It may be true, that if the plaintiffs should ever sue the drawers, that they may be allowed to make the defence which is now set up by the present defendants. This question, however, is not involved ; and we do not feel called upon to go out of our way to decide it.

Judgment reversed, demurrer to the plea in abatement sustained, and cause remanded.