NEWT CAMPBELL *v.* STATE OF MISSISSIPPI.

Supreme Court Practice — Criminal Law — Verdict — Insufficient Evidence — New Trial.

> A verdict will not be allowed to stand where there is palpable failure of the proof to sustain it. In such cases a new trial will be granted.

On Thursday morning, November 9, 1882, Henry White was found dead by the side of a road about three-quarters of a mile southeast of Eudora. His throat had been cut, a razor cover was found near the body, a hat and two sticks were also found lying near by.

On the evening before Henry White and a negro, identified as

1

This court will not grant a new trial merely because the evidence preponderates against the verdict, if there be proof legally conducing to the verdict. Dickson *v.* Parker, 3 How. 219.

Unless it be clearly against the evidence, or the palpable preponderance of evidence. Bowers *v.* Johnson, 10 S. & M. 169; Elzy *v.* Stone, 5 S. & M. 21; Fisher *v.* Leach, 10 S. & M. 313; Harris *v.* Halliday, 4 How. 338.

But if the jury find against the great preponderance of evidence a new trial will be granted. Sims *v.* McIntyre, 8 S. & M. 324; McQueen *v.* Bostwick, 12 S. & M. 604.

And where there is conflicting evidence, and no instructions asked, the preponderance of evidence against the verdict must be great. Mann *v.* Manning, 12 S. & M. 615.

And a new trial will not be granted by the court merely because the verdict is against the preponderance of evidence, and a contrary verdict would have been more satisfactory, there being no positive evidence upholding it. Lea *v.* Guice, 13 S. & M. 656.

The question in such a case is not is the verdict clearly right, but is it manifestly wrong. Waul *v.* Kirkman, 13 S. & M. 599; Prewett *v.* Coopwood, 30 Miss. 369; Drake *v.* Sarget, 36 Miss. 458.

And the test is, is there sufficient evidence fairly to support the verdict. Guion *v.* Doherty, 43 Miss. 538.

It will not be granted in a case of conflicting evidence, where the mind cannot repose with entire certainty and confidence upon a conclusion in favor of either party. Watson *v.* Dickens, 12 S. & M. 608.

Where there is a conflict in the evidence, one part sustaining the verdict, and the other against it, a new trial will not be granted unless the verdict be very clearly wrong. Garland *v.* Stewart, 31 Miss. 314; Gay *v.* Lemle, 32 Miss. 309.

The preponderance must be very clearly against the verdict. Harris *v.* Halliday, 4 How. 338.

being the defendant, were seen by several witnesses walking together toward Eudora, and both of them carried sticks. Evidence offered by defendant was that at about the time of the murder he was working on the steamer Dean Adams, plying between Arkansas City and Memphis, and that he had boarded the steamer on November 8th at Arkansas City, and that the steamer arrived in Memphis on the 9th.

George T. Smith, in rebuttal for the State, testified that the steamer passed Lambs Landing, south of Memphis, early in the morning of November 10th. A telegram from Memphis was introduced, showing the arrival of the Dean Adams there Friday morning, November 10th, between 9 and 10 o'clock.

Where the mind cannot repose with entire confidence and certainty upon a conclusion in favor of either party the verdict will not be disturbed. Watson v. Dickens, 12 S. & M. 608.

A new trial will be granted where there is no evidence to sustain the verdict. Crocket v. Young, 1 S. & M. 241.

And so where the verdict, considered with reference to the issue submitted to the jury, is not sustained by the evidence. Otey v. McAfee, 38 Miss. 348.

A new trial will not be granted on the evidence alone, unless the verdict be opposed by a decided preponderance of evidence, or based on no evidence. Cicely's Case, 13 S. & M. 202; McMann's Case, 13 S. & M. 471.

And power to set aside on the ground that verdict is opposed by decided preponderance of evidence. McMann's Case, 13 S. & M. 471.

This is specially so in cases of circumstantial evidence. Browning's Case, 33 Miss. 48.

A verdict will not be disturbed unless it is manifest from the whole record that it is clearly wrong, or unless misdirection or other apparent error may have produced it. McAlexander v. Puryear, 48 Miss. 420; Pfeifer v. Chamberlain, 52 Miss. 89.

Reluctant as this court is to disturb a verdict upon the sole ground of the sufficiency of the evidence, where there is a palpable failure of proof to sustain the verdict, it will not be allowed to stand. Harris v. State, 71 Miss. 462, 14 So. 266; Monroe v. State, 71 Miss. 196, 13 So. 884.

This court, in passing upon the correctness of a conviction, does not weigh conflicting testimony, and it will not look further than to see whether the verdict is supported by competent and sufficient evidence. In this connection the approval of the verdict of the trial judge who heard the evidence is a fact to be considered. Logan v. State, 53 Miss. 431.

But a verdict will be set aside on consideration of the facts alone if they fail to sustain it. Monroe v. State, 71 Miss. 196, 13 So. 884; Harris v. State, 71 Miss. 462, 14 So. 266; Dobson v. State, 67 Miss. 330, 7 So. 327.

A conviction will not be disturbed merely because the jury might, without being censurable, have acquitted. Skinner v. State, 53 Miss. 399.

From a verdict of guilty and sentence of life imprisonment defendant appeals.

APPEALED from Circuit Court, De Soto county, A. T. ROANE, Judge.

Reversed and remanded, January 26, 1885.

*Attorneys for appellant, D. M. McKenzie, H. C. Watson, and J. W. Foster.*

*Attorney for the State, J. L. Harris.*

Brief of H. C. Watson:

There is absolutely nothing to connect the man seen with White, the murdered man, on the evening of November 8th, with his murder.    There is absolutely nothing to show that he was at the place of murder unless it be that one of the witnesses swears that two sticks were found near the body, and one of the witnesses who saw the two men before Eudora says that each of the men had a stick.

Presuming that the " sticks " found near the body were the same " sticks " seen in the hands of the two men before they reached Eudora, is it possible that any jury would be warranted in concluding that the man with Campbell committed the murder, and if the two had been attacked and the man with Campbell had run away, what is more natural than that he should have dropped or thrown away his stick.   What more natural than that he, a stranger in a strange land, should have held his tongue in regard to the attack and murder, knowing full well that suspicion would attach to him and his account of the transaction not believed.

But if this circumstance alone is sufficient to show that the man with White on the road to Eudora continued with him past that place, turned off into the old road shown on the map in the record, and was present at the time of the murder and did the killing, the proof fails to identify the prisoner as the man with White.

The proof is overwhelming that he was not the man.   It is impossible that the books of the Dean Adams should have shown that Campbell was at work on that boat on one-half of the day of the

8th and the whole of the 9th of November and received his pay therefor, unless such had been the fact, to say nothing of the testimony of the two officers of the boat and one passenger.

Campbell stated at once, upon being arrested, that he was on the Adams at the time the murder was committed. The sheriff of the county wrote to the mate of the boat to find out about it. This fixed the matter on the mind of the mate.

The jury must have convicted upon the theory of the district attorney that the Adams was behind time on her way up from Arkansas City; that Campbell *jumped* the boat, and made his way across the country to Hernando, killing White on the way, took the train to Memphis, and arrived there in time to receive his pay. This theory involves the absurdity that the Adams made the run from Arkansas City to the landing opposite Eudora, 200 miles, in about one or two hours, and then running fifty miles to Memphis in two nights and one day.

The defendant shows by his affidavit, and from extracts from various newspapers, that it is a part of the public history that the Adams was behind on her trip down the river and not on her return trip, and proposed to show by creditable witness that these statements are true.

The murdered man, it is supposed, was killed with a razor. No razor was found on the defendant, nor any other deadly weapon. No blood was on his clothing or person.

Although tried in the committing court without counsel, surrounded by the family and friends of the murdered man at Eudora, near the scene of the murder, no expression of guilt escaped from him. No question to witness introduced against him betrayed him. During his long confinement in the jail no expression escaped him indicating guilt. Our knowledge of human nature and the history of criminal trials teach us that such things cannot be and the prisoner guilty.

Brief of D. M. McKenzie:

The evidence shows that on Wednesday, November 8, 1882, just before sunset, Henry White, accompanied by a colored man, was seen traveling on the Commerce road going east toward Hernando, and that early on the morning of the 9th, White was found near Dr. Richmond's house on the old Commerce road murdered, with his throat cut. The inference is that the colored

man who was seen traveling with Mr. White, and who was not known by any one of the witnesses, who testify to seeing him, and who has not since been found, committed the murder. Newt Campbell, the appellant, was arrested in Memphis, Tenn., on the night of the 10th of November, 1882, and charged with the murder and convicted.

The evidence for the State in this cause was not sufficient to convict, even if no evidence was offered for the defendant, but when the defendant proves that he was on the steamer Dean Adams from the middle of November 8th and continuously until the night of November 9th, as is done by the " portage-book " of said steamer, and by the emphatic, positive, and unshaken testimony of Henry Powers, mate of said boat, and also of Henry Washington, a passenger, and Thomas Jefferson, captain of the watch on said boat, and the witness Ed. Campbell proves that he had called on him shortly before the arrest, and with witness Henry Washington, just off the Dean Adams, which arrived in Memphis on Friday, November 10th, between 9 and 10 o'clock A. M. It is clearly a case of mistaken identity, and the identification is made in every instance by witnesses who had but a passing glance at the man, and the only witnesses for the State who really had opportunity to identify him, that is, who were in his presence long enough to be able to observe and know him, to-wit, Winnie Miller and Ann Chalmers, with whom it is assumed the murderer stayed all night, who both testify that while Newt Campbell looks like the man who stayed with them, that they cannot swear that the prisoner is the man. But they do swear that the prisoner is the same man they saw tried in Eudora, showing that they were observing women and would know if the prisoner was the man who stayed with them.

No two or the witnesses agree in their description of the dress worn by the negro seen with White, yet all of them who testify to Newt's identity saw him on the same road, and within fifteen minutes of each other. The only reliable and trustworthy evidence in the record is that for the defense, and that is clear and conclusive, and the witnesses without suspicion of bias.

The charges of the court were disregarded by the jury, and the Supreme Court should either grant a new trial or discharge the prisoner absolutely. He is the victim of a desire to punish some one for a most atrocious murder.

Brief of J. L. Harris:

The sole question in this case is as to the sufficiency of the evi-dence to sustain the verdict and this is submitted to the judgment of the court without argument.

OPINION.— PER CURIAM:

Repeated examinations of the facts disclosed by the record im-press us with the conviction that another trial should be awarded to the accused. It is so ordered.

Judgment *reversed*.